RATTET, PASTERNAK & GORDON-OLIVER, LLP
Proposed Attorneys for the Debtor
550 Mamaroneck Avenue
Harrison, New York 10528
(914) 381-7400

Jonathan S. Pasternak
Julie A. Cvek

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:                                                                                  Chapter 11
                                                                                              Case No. 10-22972 (RDD)
D&P MARKET PLACE LLC
D/B/A THE IRON TOMATO,

                                            Debtor.
-------------------------------------------------------------X

## DECLARATION OF SUZANNE DEMEO, MANAGING MEMBER OF DEBTOR, PURSUANT TO LOCAL RULE 1007-2

Suzanne Demeo, being duly sworn, deposes and says:

1. I am the Managing Member of D&P Market Place LLC d/b/a The Iron Tomato (the "Debtor"), and I submit this affidavit pursuant to Rule 1007-2 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York.

## BACKGROUND

2. The Debtor is a privately owned business that operates the Iron Tomato, an upscale food market and in-store eating facility located in the heart of downtown White Plains at 57 Mamaroneck Avenue, White Plains, NY 10601.

3. The Debtor commenced operations in May, 2008 and was initially capitalized by the Debtor's members in the approximate amount of $2.6 million, which funds were used to build out the premises and acquire the necessary equipment and leasehold improvements. The Debtor's

members are in essence silent partners; they did not at any time run the Debtor's day to day operations, but rather were investors whom initially capitalized the Debtor's initial build out and "start up" costs.

4. In late 2008 and early 2009, the Debtor obtained $1 million secured financing from a third party to help cover overhead expenses during the Debtor's "start-up" period.

5. Although the Debtor has now been in operation for 2 years, its revenues have not resulted in sufficient monies to adequately cover operating expenses and debt service and, combined with the continued tough economy plaguing, inter alia, the food and restaurant industries, the Debtor currently has insufficient revenue or additional available capital resources to effectively reorganize the business.

6. Accordingly, the Debtor has entered into a management agreement, and is currently in the process of negotiating an asset purchase agreement, with Ready for Salad Corp., a party wholly unrelated to the Debtor or any of its principals or management. A copy of the Management Agreement is annexed hereto as **Schedule IV.**

7. This will permit the Debtor to adequately sustain operations pending an auction sale and will therefore preserve and protect its assets to the benefit of creditors.

8. With the assistance of this Court, the Debtor is confident that it will be able to efficiently workout its debts while maximizing the value of the business for the benefit of its creditors.

9. The needs and interests of the Debtor's creditors will best be served by the continued possession of its property and management of its affairs as a Debtor-in-Possession under Chapter 11 until consummation of the contemplated sale described above or confirmation of a reorganization plan.

## INFORMATION REQUIRED BY LOCAL BANKRUTPCY RULE 1007

10. In addition to the foregoing, Local Bankruptcy Rule 1007-2 requires certain information related to the Debtor, which is set forth below.

**Local Rule 1007-2(a)(1)**

11. The Debtor is located at 57 Mamaroneck Avenue, White Plains, NY 10601 and engaged in the food and restaurant industry.

**Local Rule 1007-2(a)(2)**

12. This case was not originally commenced under Chapter 7 or 13 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

**Local Rule 1007-2(a)(3)**

13. Upon information and belief, no committee was organized prior to the order for relief in this Chapter 11 case.

**Local Rule 1007-2(a)(4)**

14. A list of the names and addresses of the Debtor's 20 largest unsecured claims, excluding those who would not be entitled to vote at a creditors' meeting and creditors who are "insiders" as that term is defined in 11 U.S.C. Section 101(31) is annexed hereto as **Schedule I**.

**Local Rule 1007-2(a)(5)**

15. A list of the names and addresses of the five largest secured creditors is annexed hereto as **Schedule II**.

**Local Rule 1007-2(a)(6)**

16. An estimated balance sheet is annexed hereto as **Schedule III.**

**Local Rule 1007-2(a)(7)**

17. There are no publicly held securities of the Debtor.

**Local Rule 1007-2(a)(8)**

18. None of the Debtor's property is in the possession of any custodian, public officer, mortgagee, pledge, assignee of rents, or secured creditor, or any agent for such entity.

**Local Rule 1007-2(a)(9)**

19. The Debtor subleases its business premises from Suzanne Demeo, one if it's managing members, which lease is in effect and does not expire until 2025.

**Local Rule 1007-2(a)(10)**

20. The Debtor's assets and records are located at its principal place of business at 57 Mamaroneck Avenue, White Plains, NY 10601.

**Local Rule 1007-2(a)(11)**

21. The following actions are pending against the Debtor:

    825 South Lake Restaurant Corp v. D&P Marketplace LLC, State of New York, Westchester County, White Plains Civil Court, Index No. CC-2009-2026 (collection action)

    Stephen B Jacobs Group PC v. D&P Marketplace LLC d/b/a/ The Iron Tomato, Supreme Court of the State of New York, Westchester County (collection action)

    Utica Mutual Insurance Company v. Nick Fusco d/b/a The Iron Tomato, Supreme Court of the State of New York, Nassau County, Index No. 2237/10 (collection action)

**Local Rule 1007-2(a)(12)**

22. Pursuant to a management agreement, the Debtor is managed by Ready for Salad Corp.

**Local Rule 1007-2(b)(1) and (2)**

23. The Debtor's estimated weekly payroll to employees for the thirty (30) day period following the Chapter 11 petition is $67,500.

24. The Debtor's estimated weekly payroll and payments to officers, stockholders, and directors for the thirty (30) day period following the Chapter 11 petition is $0.

**Local Rule 1007-2(b)(3)**

### 30 Day Cash Estimated Receipts and Disbursements

**Receipts**

| | |
|---|---|
| Receipts | $250,000 |
| **Total Receipts:** | **$250,000** |

**Disbursements**

| | |
|---|---|
| Food Purchases | $125,000 |
| Gross Payroll | $67,500 |
| Sales Tax | $13,000 |
| Rent | $25,000 |
| Utilities | $8,000 |
| Insurance | $4,000 |
| Advertising | $10,000 |
| Equipment Maintenance | $2,000 |
| Debt Service | $11,000 |
| **Total Disbursements:** | **$254,000** |
| **Cash Available:** | **($4,000)** |

### CONCLUSION

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

By: */s/ Suzanne Demeo*
Suzanne Demeo, Managing Member

# SCHEDULE I
## List of 20 Largest Unsecured Creditors

**See Attached.**

B4 (Official Form 4) (12/07)

# United States Bankruptcy Court
## Southern District of New York

In re **D&P Market Place LLC**      Case No. **10-22972**
Debtor(s)     Chapter **11**

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [*or* chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

| (1) Name of creditor and complete mailing address including zip code | (2) Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | (3) Nature of claim (trade debt, bank loan, government contract, etc.) | (4) Indicate if claim is contingent, unliquidated, disputed, or subject to setoff | (5) Amount of claim [if secured, also state value of security] |
|---|---|---|---|---|
| Frank & Mary Palazzolo<br>800 Central Park Avenue<br>Suite 201<br>Scarsdale, NY 10583 | Frank & Mary Palazzolo<br>800 Central Park Avenue<br>Suite 201<br>Scarsdale, NY 10583 | | | 1,000,000.00<br><br>(0.00 secured) |
| Internal Revenue Service<br>P.O. Box 21126<br>Philadelphia, PA 19114 | Internal Revenue Service<br>P.O. Box 21126<br>Philadelphia, PA 19114 | | Contingent<br>Unliquidated<br>Disputed | 400,000.00 |
| Hudson Valley Bank<br>21 Scarsdale Road<br>Yonkers, NY 10707 | Hudson Valley Bank<br>21 Scarsdale Road<br>Yonkers, NY 10707 | Business Loan | | 300,000.00 |
| NYS Department of Tax & Financ<br>Bankruptcy/Special Procedures<br>P.O. Box 5300<br>Albany, NY 12205-0300 | NYS Department of Tax & Financ<br>Bankruptcy/Special Procedures<br>P.O. Box 5300<br>Albany, NY 12205-0300 | | Contingent<br>Unliquidated<br>Disputed | 201,125.31 |
| Ace Endico<br>80 International Blvd.<br>Brewster, NY 10509 | Ace Endico<br>80 International Blvd.<br>Brewster, NY 10509 | Trade debt | | 85,025.72 |
| Con Edison of New York<br>JAF Station<br>P.O.Box 1702<br>New York, NY 10116-1702 | Con Edison of New York<br>JAF Station<br>P.O.Box 1702<br>New York, NY 10116-1702 | Utlities | | 40,953.30 |
| NYS Workers Comp. Board<br>RMS Collections<br>55 Broadway Suite 201<br>New York, NY 10006 | NYS Workers Comp. Board<br>RMS Collections<br>55 Broadway Suite 201<br>New York, NY 10006 | | Contingent<br>Unliquidated<br>Disputed | 36,000.00 |
| NYS Unemployment Insurance Fund<br>P.O. Box 551<br>Albany, NY 12201 | NYS Unemployment Insurance Fund<br>P.O. Box 551<br>Albany, NY 12201 | Employment Taxes | Contingent<br>Unliquidated<br>Disputed | 34,842.00 |
| Stephen B. Jacobs Group PC<br>c/o Rattner & Associates<br>2 Perlman Drive Ste 310<br>Spring Valley, NY 10977 | Stephen B. Jacobs Group PC<br>c/o Rattner & Associates<br>2 Perlman Drive Ste 310<br>Spring Valley, NY 10977 | | | 25,000.00 |

B4 (Official Form 4) (12/07) - Cont.

In re  **D&P Market Place LLC**                                        Case No. **10-22972**

                                    Debtor(s)

# LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
(Continuation Sheet)

| (1) Name of creditor and complete mailing address including zip code | (2) Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | (3) Nature of claim (trade debt, bank loan, government contract, etc.) | (4) Indicate if claim is contingent, unliquidated, disputed, or subject to setoff | (5) Amount of claim [if secured, also state value of security] |
|---|---|---|---|---|
| **Master Purveyors<br>Hunts Point Coop Market<br>Bldg B-14<br>Bronx, NY 10474** | **Master Purveyors<br>Hunts Point Coop Market<br>Bldg B-14<br>Bronx, NY 10474** | **Trade debt** | | **24,179.53** |
| **Genesis & Aliyah Distributors<br>219 Claremont Ave<br>Mount Vernon, NY 10552** | **Genesis & Aliyah Distributors<br>219 Claremont Ave<br>Mount Vernon, NY 10552** | **Trade debt** | | **23,411.00** |
| **Vesuvio<br>41 Fieldcrest Avenue<br>Edison, NJ 08837** | **Vesuvio<br>41 Fieldcrest Avenue<br>Edison, NJ 08837** | **Trade debt** | | **20,407.34** |
| **47 Mamaroneck Avenue Corp.<br>Attn: Timothy Engel<br>47 Mamaroneck Avenue<br>White Plains, NY 10601** | **47 Mamaroneck Avenue Corp.<br>Attn: Timothy Engel<br>47 Mamaroneck Avenue<br>White Plains, NY 10601** | **May 2010 Rent** | | **18,500.00** |
| **Borax Paper Products, Inc.<br>1390 Spofford Avenue<br>Bronx, NY 10474-6100** | **Borax Paper Products, Inc.<br>1390 Spofford Avenue<br>Bronx, NY 10474-6100** | **Trade debt** | | **16,470.20** |
| **Utica Mutual Insurance Company<br>PO Box 6540<br>Utica, NY 13504-6540** | **Utica Mutual Insurance Company<br>PO Box 6540<br>Utica, NY 13504-6540** | | | **15,000.00** |
| **Micros<br>7031 Columbia Gateway Drive<br>Columbia, MD 21046** | **Micros<br>7031 Columbia Gateway Drive<br>Columbia, MD 21046** | **Trade debt** | | **15,000.00** |
| **Cibo/Colavita<br>PO Box 9143<br>Elizabeth, NJ 07202** | **Cibo/Colavita<br>PO Box 9143<br>Elizabeth, NJ 07202** | **Trade debt** | | **13,632.29** |
| **Tufo's Wholesale Dairy<br>4180 Boston Post Road<br>Bronx, NY 10475** | **Tufo's Wholesale Dairy<br>4180 Boston Post Road<br>Bronx, NY 10475** | **Trade debt** | | **11,223.59** |
| **Campania Foods & Imports<br>414 Bergen Blvd<br>Palisades Park, NJ 07650** | **Campania Foods & Imports<br>414 Bergen Blvd<br>Palisades Park, NJ 07650** | **Trade debt** | | **9,617.02** |
| **Snapple<br>12891 Collections Center<br>Chicago, IL 60693** | **Snapple<br>12891 Collections Center<br>Chicago, IL 60693** | **Trade debt** | | **9,153.78** |

B4 (Official Form 4) (12/07) - Cont.

In re **D&P Market Place LLC**          Case No. **10-22972**

Debtor(s)

# LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
(Continuation Sheet)

## DECLARATION UNDER PENALTY OF PERJURY
## ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, the Member of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date **May 14, 2010**      Signature **/s/ Suzanne Demeo**
                                                                               **Suzanne Demeo**
                                                                               **Member**

*Penalty for making a false statement or concealing property*: Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. §§ 152 and 3571.

# SCHEDULE II

## List of 5 Largest Secured Creditors

| **Name of Creditor** | **Estimated Amount Owed** |
|---|---|
| Frank & Mary Palazzolo<br>c/o Lawrence M Gottlieb, Esq.<br>Hass & Gottlieb<br>670 White Plains Road<br>Scarsdale, NY 10583 | $1,000,000 |

# SCHEDULE III

## Estimated Balance Sheet as of 4/30/10

**ASSETS:**

| | |
|---|---|
| Cash On Hand | $5,000 |
| Leasehold Improvements | $200,000 |
| Inventory | $10,000 |
| Equipment | $750,000 |
| TOTAL ASSETS: | $965,000 |

**LIABILITIES:**

| | |
|---|---|
| Secured Note Payable | $1,000,000 |
| Unsecured Note Payable | $300,000 |
| Sales and Payroll Tax Payable | $800,000 |
| Accounts Payable | $350,000 |
| TOTAL LIABILITIES: | $2,450,000 |

# SCHEDULE IV

**Management Agreement with Ready for Salad Corp.**

# MANAGEMENT AGREEMENT

**MANAGEMENT AGREEMENT** (this "Agreement") made as of May 14, 2010 (the "Effective Date") by and between D&P MARKET PLACE LLC (the "Company"), a New York corporation with its principal place of business at 57 Mamaroneck Avenue, White Plains, NY 10601 and READY FOR SALAD CORP. ("Manager"), a New York Corporation, with an address of 14 Americo Circle, Ossining, NY 10562.

**WHEREAS,** the Company is engaged in the business of operating a food and eat-in restaurant facility (the "Business"); and

**WHEREAS,** the Company intends to immediately file for bankruptcy protection under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York; and

**WHEREAS,** the Company has determined in its business judgment that it is in the best interests of its creditors and estate to immediately sell subject to higher and better offers and Bankruptcy Court approval substantially all of the Business and other related assets (the "Sale") in light of its current financial situation; and

**WHEREAS,** the Company has entered into an Asset Purchase Agreement (the "APA") with the Manager for the purchase of substantially all of the Business and other related assets;

**WHEREAS,** the Company may not be properly able to sustain operations pending the contemplated sale without outside management assistance form the Manager

**WHEREAS,** the parties hereto desire to enter into this Agreement to provide for the engagement of the Manager by the Company to provide management services to the Company as of May 17, 2010.

**NOW, THEREFORE,** in consideration of the premises and covenants set forth herein, and intending to be legally bound hereby, the parties hereto agree as follows:

1. **Retention of the Manager; Services.**

   a. The Company hereby retains the Manager to perform the management services described herein. The Manager agrees to provide such management services (the "Services") to the Company in accordance with this Agreement.

   b. The Manager shall be responsible for the strategic, financial, consultative and administrative obligations related to the operation of the Business. The Manager shall make commercially reasonable efforts to continue the Company's compliance with all local and state regulations relating to the Business. The Services shall include, but not be limited to using the Company assets to operate the business, including servicing the Debtor's existing customers, billing of customers and collection of receipts, payment of vendors and employees, maintaining equipment and licenses, and all other acts reasonably required with respect to the operation of the Business.

2. **Limitations on Manager's Authority.**

   Notwithstanding anything herein to the contrary, without the prior consent of the Company, the Manager shall have no authority to do any of the following during the term of this Agreement:

   a. incur debt for or on behalf of the Company other than in the ordinary course of business;

   b. make any change to the Company's billing systems;

   c. change the name or otherwise alter the design of the logo utilized by the Company;

   d. transfer title to or control over any of the Company's assets; and

   e. do any other act not in the ordinary course of the Company's business or not for the betterment of the Company.

3. **Term.**

   a. The term of this Agreement (the "Term") shall commence as of the Effective Date and shall terminate on the earlier of (a) a closing on a sale of the Business to Manager or (b) termination of the APA between the parties.

   b. Notwithstanding anything to the contrary herein, this Agreement may be terminated pursuant to the provisions of Section 7 hereof.

4. **Compensation.**

   For each calendar month of the Term (or if any month of the Term commences other than the first of the month pro-rated for each such portion thereof)(the "Pay Period"), the Manager shall be permitted to use the assets of the Company and retain for its sole benefit all profits of the Company after paying all ordinary and necessary expenses of the Business, including but not limited to goods purchased, payroll, rent, taxes and insurance. Manager shall be responsible for all expenses incurred for operation of the Business that become due on or after May 17, 2010 and during its period of operation of the Business under this Agreement. Manger shall retain all profits and sustain all losses during the period of operation of the Business under this Agreement.

5. **Funding by Manager**

   Upon approval of this Agreement by the Bankruptcy Court, Manager is hereunder authorized to use its own funds, as may be necessary, in addition to the assets and property of the Company, to fund any deficiencies in operating capital for the Business. The funds advanced by Manager shall be waived upon the closing of the Sale to Manager. The funds, if any, belonging to the Company and remaining on premises on May 17, 2010 may be utilized by the Manager.

6. **Termination.**

   a. Notwithstanding any other provisions of this Agreement, the Company may, in its sole discretion, immediately terminate this Agreement at any time should any of the

following occur: (a) Manager's material breach of, or material failure to perform, any term, representation, condition or responsibility by Manager under this Agreement which is not cured within 10 days after receipt of notice of such breach; (b) failure to maintain Workers Compensation Insurance, General Liability Insurance; or (c) conduct by Manager that is determined by a court of competent jurisdiction to be grossly negligent or fraudulent.

7. **Representations and Warranties of Manager.**

   a. Manager is duly authorized to enter into and perform this Agreement.

   b. Manager has the personnel and skills to perform the services required of it pursuant to this Agreement.

   c. Manager will perform all of its service on behalf of, for the benefit of, and in the name of, the Company.

   d. Manager is unaware of any law, regulation, contract or agency which would prevent it from performing the Services.

   e. Manager is aware that the Company is now debtor in possession pursuant to a chapter 11 bankruptcy filing.

   f. Manager warrants and represents it will procure and shall maintain, at its own expenses, insurance in adequate amounts and coverage of such types and amounts as are usual and customary for similar businesses or as may be required by law, or by the United States Trustee, including comprehensive general liability insurance, workers' compensation, and employers' liability insurance, boiler and machinery insurance, business interruption insurance, and any other insurance deemed necessary for the operation of the Business. Manager agrees that said insurance coverage shall name the Company, and such other persons as the Manager may reasonably request, as additional insureds and shall be with a carrier authorized to do business

within the State of New York and whom Manager shall approve in its reasonable discretion subject to the approval of the Bankruptcy Court.

8. **Representations and Warranties of the Company.**

   a. The Company is authorized to enter into and perform this Agreement and also obtain the appropriate approvals and orders from the U. S. Bankruptcy Court to implement and put into effect this Agreement.

   b. The Company has all licenses and permits to operate a waste disposal business at the Property.

   c. The Company is not prohibited by any law, regulation, contract or agency, including the Bankruptcy Court from entering into and performing under this Agreement

9. **Amendments.**

Any amendment to this Agreement shall be made in writing and signed by the parties against whom enforcement shall be sought.

10. **Independent Contractor.**

The parties intend that the Manager render services hereunder, as an independent contractor, and nothing herein shall be construed to be inconsistent with this relationship or status. The Manager shall be responsible for its and his own taxes.

11. **Assignment.**

This Agreement and all rights and obligations of the Company and the Manager shall inure to the benefit of its respective permitted successors and assigns. The duties and rights of the parties hereto hereunder are personal to such parties and may not be delegated or assigned by him or it without prior written consent of the other parties.

12. **Notices.**

All notices and other communications provided for in this Agreement shall be in writing and shall be deemed to have been duly given when delivered personally, by registered or certified mail, postage prepaid, or by a nationally recognized overnight courier service as follows:

| | |
|---|---|
| If to the Manager: | Ready For Salad Corp.<br>14 Americo Circle<br>Ossining, NY 10562 |
| With a copy to: | Bruce Alter, Esq.<br>Alter Goldman & Brescia, LLP<br>550 Mamaroneck Avenue<br>Harrison, New York 10528<br>(914) 670-0030 |
| If to the Company: | D&P Market Place LLC<br>57 Mamaroneck Avenue<br>White Plains, New York 10601<br>Attn: Suzanne Demeo |
| With a copy to: | Jonathan S. Pasternak, Esq.<br>Julie Cvek, Esq.<br>Rattet, Pasternak & Gordon Oliver, LLP<br>550 Mamaroneck Avenue<br>Harrison, New York 10528<br>(914) 381-7400 |

or to such other address as any party may have furnished to the other parties in writing in accordance herewith.

13. **Miscellaneous.**

a. Governing Law. This Agreement shall be governed by and in accordance with the laws of the State of New York without regard to conflict of law rules thereof.

b. Severability. If any provision of this Agreement or the application of any such provision to any party or circumstances shall be determined by any court of competent

jurisdiction to be invalid and unenforceable to any extent, the remainder of this Agreement or the application of such provision to such person or circumstances other than those to which it is so determined to be invalid and unenforceable, shall not be affected thereby, and each provision hereof shall be validated and shall be enforced to the fullest extent permitted by law.

  c. Survivorship. The respective rights and obligations of the parties hereunder shall survive any termination of this Agreement to the extent necessary to the intended preservation of such rights and obligations.

  d. Headings. All descriptive headings of sections and paragraphs in this Agreement are intended solely for convenience, and no provision of this Agreement is to be construed by reference to the heading of any section or paragraph.

  e. Entire Agreement. This Agreement represents the entire agreement between the parties. All agreements and representations of the parties are set forth herein. This Agreement cannot be modified or amended except in a writing signed by the parties.

  f. Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

### 14. Bankruptcy Court: Arbitration.

  a. The Bankruptcy Court shall have jurisdiction over this Agreement while the Company remains under the jurisdiction of the Bankruptcy Court.

  b. After the Company ceases to be subject to the jurisdiction of the Bankruptcy Court, any disputes relating to this Agreement or the performance by any party hereunder will be settled pursuant to the then current expedited procedures applicable to the then current commercial arbitration rules of the American Arbitration Association, such arbitration to be conducted in New York, New York by three arbitrators, one appointed by each of the

Manager and the Company and the third selected by the first two appointed arbitrators. The parties will each instruct the arbitrators to render a determination of any dispute so submitted within ten (10) days of the selection of the third arbitrator. All costs, fees and disbursements arising in connection with the arbitration will be borne as the arbitrators deem equitable under the circumstances.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the date first above written.

**The Company:**
**D&P MARKET PLACE LLC**

By: _____
Name: Suzanne Demeo
Title: Managing Member

**The Manager:**
**READY FOR SALAD CORP.**

By: _____
Name: Stephen Berg
Title: President
Vice